UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD JELLS, | ) | CASE NO. 1:98 CV 0 2453 |
| | ) | |
| Petitioner, | ) | |
| | ) | CHIEF JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| BETTY MITCHELL, WARDEN, | ) | |
| | ) | **ORDER** |
| Respondent. | ) | |

Before the court is Petitioner, Reginald Jells's ("Jells") *pro se* Motion for Unconditional Writ of Habeas Corpus, (ECF No. 129), and Motion to Enforce the Writ of Habeas Corpus as Mandated by the Sixth Circuit. (ECF No. 132.) In both Motions, Jells argues that the State has not complied with this court's February 6, 2009 Order enforcing the Sixth Circuit's Mandate. Jells therefore requests that the court: (1) reclassify his conviction to a non-felony-murder homicide; (2) expunge his kidnapping conviction and related capital felony-murder death specification; (3) issue an unconditional writ; and (4) release him from confinement. (ECF No. 128.) Betty Mitchell, Respondent ("Respondent") opposed both Motions. (ECF Nos. 130; 133.) For the following reasons, the court will **DENY** the *pro se* Motion for Unconditional Writ and **DENY** the Motion to Enforce the Writ of Habeas Corpus.

## I. Relevant Procedural History

A three-judge panel in Cuyahoga County Common Pleas Court convicted Jells of aggravated murder and sentenced him to death for the kidnap and murder of Ruby Stapleton. During trial, several witnesses testified that they saw Jells force Stapleton and her son, Devon Stapleton, into Jells's van.

After exhausting his state court appeals, Jells filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this court on September 21, 1999. (ECF No. 34). The court denied all 23 claims raised in the Petition on March 18, 2002, ( ECF No. 117), but issued a certificate of appealability ("COA") on Jells's ineffective assistance of counsel during mitigation claim. (ECF No. 118). On appeal, Jells sought, and the Sixth Circuit Court of Appeals granted, a COA regarding a *Brady v. Maryland*, 373 U.S. 83 (1963) claim, jury waiver claim, and suggestive line-up claim. *Jells v. Mitchell*, 538 F.3d 478, 486 (6th Cir. 2008).

On August 18, 2008, the Sixth Circuit reversed the district court's denial of Writ, finding that Jells's *Brady* claims warranted habeas relief as to the State's kidnapping charge.[1] *Id.* It reasoned as follows:

> . . . [B]ecause Jells was charged with felony murder based upon a kidnapping, we need not, and do not, find that the trial court might have reached a different conclusion as to Jell's culpability as to the murder of Stapleton. Instead, it is sufficient for us to find, as we do, that the withheld *Brady* information refutes the prosecution's weak presentation of evidence regarding whether a kidnapping occurred.

*Id.* at 508. It reversed the judgment of the district court, granting Jells "a conditional Writ of Habeas

---

[1] The Sixth Circuit also held that Jells was entitled to habeas relief because he received ineffective assistance of counsel during the penalty phase of his trial. *Id.* at 501.

Corpus, vacating his death sentence unless the State of Ohio commences a new penalty-phase trail [sic] against him within 180 days from the date that this judgment becomes final" and remanding "the case for further proceedings consistent with this opinion." *Jells*, 538 F.3d at 513.

Upon issuance of the Sixth Circuit's Mandate Order, the court held a telephonic status conference. It issued a conditional Writ of Habeas Corpus in compliance with the Mandate Order on February 6, 2009, remanding the case back to the state court. (ECF No. 128.)

On June 23, 2009, the state court ordered Jells to be moved to the Cuyahoga County jail. On July 1, 2009, three days prior to the expiration of the Mandate time period, the state court appointed counsel for Jells and held a pre-trial. Counsel thereafter filed a motion to dismiss the felony-murder capital specification as it was based on the kidnapping conviction. Counsel asserted that the court could not re-sentence Jells to death as such a ruling would not be consistent with the Sixth Circuit's Mandate, because that court had invalidated the kidnapping conviction and there no longer was a felony on which to base a felony murder specification. The trial court orally overruled counsel's motion on August 11, 2010. It then set a trial date for January 4, 2011.

Jells filed a *pro se* Motion for an Unconditional Writ on March 30, 2010, arguing that this court should issue an unconditional Writ because the state failed to retry him within the Mandate period. (ECF No. 129.) Several months later, when the trial court denied appointed counsel's motion to dismiss the capital specification, habeas counsel filed the instant Motion to Enforce the Writ of Habeas Corpus as Mandated by the Sixth Circuit. (ECF No. 132). Therein Jells asserts that the trial court has violated the Mandate Order by determining that Jells remains death-penalty eligible.

## II. *Pro Se* **Motion for Unconditional Writ**

In this Motion, Jells asserts that he is entitled to unconditional habeas relief because the State did not re-try him within the Mandate period. He argues that because the State court did not order him moved to a Cuyahoga County prison until June 23, 2009. Because the State caused the delay that violated the Mandate, Jells argues, this court now must issue an unconditional Writ of Habeas Corpus.

The court will not rule on the merits of this Motion. Pursuant to 28 U.S.C. § 1654, in all United States courts, "parties may plead and conduct their own cases personally or by counsel . . . ." 28 U.S.C. § 1654. The Sixth Circuit has held that in a criminal case, a defendant has the right to be represented by counsel or to self-representation, but not both. *United States v. Mosley*, 810 F.2d 93, 97 (6th Cir. 1987). Finding that the use of "hybrid representation," or representation by counsel and *pro se*, would confuse the jury and cause undue delay, the *Mosley* court held that the district court had not abused its discretion by prohibiting it. *Id.* at 98.

While the Sixth Circuit has yet to issue an opinion regarding hybrid representation in habeas corpus cases, other courts have held that no such right exists, including another judge on this court. In *Keenan v. Bagley*, No. 1:01CV2139, 2010 WL 1133238, at *1 (N.D. Ohio, Mar. 19, 2010) (Katz, J.), the court held that, because the petitioner was represented by counsel, he could not file a *pro se* supplemental traverse when appointed counsel already had filed one. Accordingly, the court granted the respondent's motion to strike the *pro se* filing. *See also Lee v. State of Alabama*, 406 F.2d 466, 469 (5th Cir. 1969) (finding habeas petitioner could proceed *pro se* or through counsel but had no right to hybrid representation); *Estrada v. Cockrell*, No. 3:01-CV-0371-P, 2003 WL 21488224, at *2 (N.D. Tex., Apr. 23, 2003) (following *Lee*); *Donovan v. State*, No. 00-268-P-H, 2001 WL

179887, at *1 (D. Me., Feb. 16, 2001) (following criminal case jurisprudence and holding that a habeas corpus petitioner was not entitled to hybrid representation under § 1654).

The court finds that, pursuant to the above authority, the Petitioner cannot proceed by hybrid representation in this matter. Because the *Mosley* Court, which adjudicated on a criminal defendant's constitutional right to hybrid representation, found that none exists, this court consequently must find that a habeas petitioner, whose right to counsel is merely statutory, *see* 21 U.S.C. § 848(q), has no right to hybrid representation. Moreover, the court finds the *Donovan* court's reasoning persuasive. The language of § 1654 suggests that parties may proceed either with or without counsel, but makes no provision for hybrid representation.

Because Jells filed the Motion for Unconditional Writ of Habeas Corpus *pro se* but is represented by counsel, the court will not consider it on the merits. Accordingly, the Motion is denied.

### III. Motion to Enforce Writ of Habeas Corpus

Habeas counsel also assert that Jells is entitled, *inter alia*, to an unconditional Writ of Habeas Corpus. Counsel maintain that Jells no longer is death-eligible because in its granting of the Writ, that court invalidated the only capital specification the court found during trial. Consequently, counsel argue, any attempt to re-sentence Jells to death is inconsistent with the Sixth Circuit's and this court's Mandate Orders.[2] Counsel therefore conclude that the court now must issue an unconditional Writ of Habeas Corpus.

---

[2] As noted above, counsel also request that Jells's criminal record pertaining to the kidnapping conviction be expunged and that the felony-murder conviction be re-classified to a non-felony-murder conviction.

### A. Applicable Law

### 1. District Court's Issuance of Unconditional Writ

The purpose of a habeas court's issuance of a conditional writ is to afford the state an opportunity to remedy its error. As the United States Supreme Court opined, "Conditional writs enable habeas courts to give States time to replace an invalid judgement with a valid one." *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005); *see also McKitrick v. Jeffreys*, 255 F.3d Appx. 74, 75-6 (6th Cir. 2007) ("District courts rightly favor conditional grants of the writ, which, in addition to providing the state an opportunity to cure its constitutional errors, maintain comity among co-equal sovereigns."). When a district court issues a conditional writ, an unconditional writ "lies latent unless and until the state fails to perform the established condition, at which time the [unconditional writ] springs to life." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) (citations omitted).

A habeas court retains jurisdiction to determine whether the state has complied with the conditions set forth in the conditional writ. *Id*. at 692. Once the district court has determined that the state has not satisfied the conditions in the writ, it is appropriate for the court to order the immediate release of the petitioner. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006); *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985).

Notwithstanding the seemingly absolute language of a conditional writ, a district court retains the equitable power to extend the writ in the face of non-compliance. *Harvest v. Castro*, 531 F.3d 737, 742 (9th Cir. 2008) ("Despite the absolute language employed by some jurists and commentators, several of our sister circuits have nevertheless held that a district court can modify its conditional order even after the expiration of the time period set in the order, thus allowing the State to retain the petitioner in its custody even when the State failed to act within the prescribed

time period."); *see also McKitrick*, 255 Fed. Appx. at 76 ("Despite the seemingly rigid language on which Petitioner relies for his request, *Satterlee* does not require immediate release in all cases where a term of the conditional writ was not performed precisely as ordered."); *but see Wilkinson*, 544 U.S. at 87 (Scalia, J., concurring) ("[T]he consequence [for failure to comply with a conditional writ] is always release.").

The Sixth Circuit, in accord with its sister circuits, has concluded that full compliance with a conditional writ is not *always* required. In *McKitrick*, the Sixth Circuit held that a district court "must make a finding concerning the sufficiency of the actions the state has taken pursuant to the district court's mandate, and it also must evaluate the prejudice to the petitioner by any non-compliance. Substantial compliance with the terms of the order may be sufficient." *Id.* 255 Fed. Appx. at 76 (citations omitted).

The habeas petitioner in *McKitrick* moved the district court for his immediate release when the state failed to resentence him within the 90 days prescribed in the conditional writ order. *Id.* at 75. Because the state had resentenced the petitioner on the 91st day, however, the district court held that the state's substantial compliance with the conditional writ was sufficient to deny the petitioner's motion. Finding that district courts enjoy broad discretion to determine whether an extension of the conditional writ is justified, the Sixth Circuit concluded that the district court did not abuse its discretion in finding in favor of the state. *Id.* at 77-8.

Other district courts in this circuit have relied on *McKitrick* to extend conditional writs where the state has substantially complied with its terms. In *Foster v. Money*, No. 05-CV-1009, 2008 WL 4148594 (N.D. Ohio, Sept. 4, 2008), for example, another judge on this court held that the state had substantially complied with the conditional writ that required the state to commence retrial within

-7-

120 days or tender a new plea offer to the petitioner. *Id.* at *1. The court held that, because the delay was occasioned by the petitioner's requests for new counsel and two defense requests for a trial continuance, the state had substantially complied with the court's 120-day mandate. *Id.* at *2. In *Brown v. Curtis*, No. 07-CV-14038, 2009 WL 236692 (E.D. Mich., Feb. 2, 2009), a district court held that the state substantially complied with its conditional writ requiring the state to make factual determinations regarding the petitioner's speedy trial claim, when the state court conducted a hearing that involved the taking of testimony and appointment of counsel for petitioner during the hearing, although these actions were not required to satisfy the mandates of the writ. *Id.* at *2. Thus, *McKitrick* and its progeny offer some guidance to the court, both as to the existence of its authority to extend its own conditional writ and of the types of factors the court may consider in deciding whether to exercise its discretion to invoke that authority.

Other circuits also have addressed the scope of this equitable power. In *Gilmore v. Bertrand*, 301 F.3d 581 (7th Cir. 2002), the Seventh Circuit took an expansive view of it, holding, "[l]ogically, the equitable power of the district court in deciding a habeas corpus petition includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency." *Id.* at 582-83. It affirmed the district court's decision to extend the time in the conditional writ despite the state's failure to act, although it did not discuss its reasons for doing so in the opinion.

The Third Circuit's *Gibbs v. Frank*, 500 F.3d 202 (3d Cir. 2007), offers more guidance on the equitable considerations a court should assess when deciding whether to extend the mandates of a conditional writ. There, the district court issued a conditional writ requiring the state to retry the petitioner within 120 days. *Id.* at 204. The district court granted the state's request for an

-8-

extension of the retrial period when it found that: (1) the petitioner objected to the appointment of the public defender as his counsel; (2) the public defender's father was a police officer who investigated the homicide of which the petitioner was convicted, causing his removal; (3) the petitioner's counsel requested a continuance of the trial; (4) the 120-day time period in the mandate was based on Pennsylvania state law speedy trial rule, which excludes delays attributable to the defense. *Id.* at 209-10. In reaching this conclusion, *Gibbs* relied in part on *Chambers v. Armontrout*, 16 F.3d 257, 261 (8th Cir. 1994), an Eighth Circuit decision that also held that evidence that the petitioner partially caused the delay in retrial is one equitable factor that can support a state's request to extend the time in an existing mandate.

Finally, in *Harvest,* the Ninth Circuit reversed a district court's decision to extend the mandate period in a conditional writ when the state failed to act because of the state attorney general's "professionally inexcusable" inadvertence. *Id*. 531 F.3d. at 741. There, the attorney general assigned to the case failed to provide the district court's conditional writ order to the county prosecutor's office until after the mandate period had expired. Reviewing the state's request for an extension of time as a Rule 60(b) motion, the Ninth Circuit held that the state failed to demonstrate that its actions were caused by "circumstances beyond its control." *Id.* at 749. It therefore concluded that the district court abused its discretion in modifying the conditional writ.

Because circuit courts, including the Sixth Circuit, have yet to establish a definitive test for the exercise of a district court's equitable power in these circumstances, the court must synthesize existing authority to determine what equitable factors fairly inform the exercise of its discretion when faced with a motion to modify a conditional writ. First, as both the *Gibbs* and *Chambers* courts concluded, a district court should consider whether the petitioner's actions either wholly or

-9-

partially caused the delay. Second, it is clear that *McKitrick* requires this court to evaluate the extent to which the state undertook to comply with the writ. In this regard, because the request to extend a conditional writ is a request for equitable relief directed to the discretion of the district court, the court must look for more than the mere presence of *some* activity by the state; substantial compliance presupposes that the activity undertaken by the state is *meaningful* activity, activity that represents a good faith effort to comply with the mandate of a conditional writ. Finally, while not mentioned specifically in the above case law, logic would dictate that this court examine all aspects of the parties' respective responses to this court's order and give due weight to *any* relevant equitable considerations.

### 2. District Court's Interpretation of Mandate Language

If the court concludes that it has jurisdiction to issue an unconditional writ, it next must decide whether the language in the mandate order permits it to do so. The mandate rule instructs that a district court is bound by the scope of the mandate language upon remand. *United States v. Stout*, 599 F.3d 549, 554 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 351 (2010). The Sixth Circuit has categorized mandate language into two types; either general or limited. *Id.* at 555. If the mandate order contains no language specifically limiting the district court's actions, "the remand order is presumptively a general one." *Id.* (quoting *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)) (internal quotation marks omitted).

To determine into which category a specific remand order falls, a district court looks at several factors, including: (1) "whether specific language in the remand clearly limits the scope of subsequent proceedings; (2) whether the appellate court explicitly articulated the reasons for its remand; (3) whether the appellate court articulated a prescribed chain of events with particularity;

and (4) whether multiple issues are involved (which, if present, suggest a general mandate." *United States v. McCreary-Redd*, No. 08-5972, 2010 WL 4244124, at *11 (6th Cir. Oct. 15, 2010) (quoting *United States v. Guzman*, 48 Fed. Appx 158, 161 (6th Cir. 2002)).

### B. Legal Analysis

Jells was ordered returned to Cuyahgoa County by the trial court on June 23, 2009, and a pretrial was held on July 1, 2009. On that date, counsel was appointed as well as a mitigation specialist. The 180 day period for retrial of the mitigation phase began the date of the mandate, January 5, 2009 and expired July 4, 2009. On July 17, 2009, Jells requested the first of ten pretrial continuances. In addition, he was granted 3 extensions of time to file a motion to dismiss which was eventually filed on October 20, 2009. The mitigation specialist would need time to prepare for the mitigation hearing, and such preparation would have extended beyond the Sixth Circuit's 180 day time for retrial even if the trial court had started proceedings earlier. Jells's counsel contributed to the delay in completing the sentencing hearing.The State therefore substantially complied with the Sixth Circuit order. Because of the time needed by defense counsel, Jells was not prejudiced by any non-compliance.

Jells argues that the Sixth Circuit reversed the trial court because of a **Brady** violation concerning the kidnapping of the murder victim. The court allegedly determined that the kidnapping charge was nullified, thereby vacating any aggravating circumstance. Petitioner asserts the State court's intention to proceed with a death-eligible sentencing hearing is therefore in violation of the Sixth Circuit's Opinion. This court should now expunge the kidnapping counts and related capital specification, and order the State to reclassify Jells's conviction as a non-felony murder.

The Sixth Circuited, in reversing the trial court, stated:

-11-

> For the reasons above, we REVERSE the judgment of the district court but GRANT Jells a conditional writ of habeas corpus, vacating his death sentence unless the State of Ohio commences a new penalty-phase trail [sic] against him within 180 days from the date that this judgment becomes final, and REMAND the case for further proceedings consistent with this opinion.

*Jells*, 538 F.3d at 513.

The court did not vacate Jells's kidnapping specification. It stated:

> The question is not whether the State would have had a case to go to the jury if it had disclosed the favorable evidence, but whether we can be confident that the jury's verdict would have been the same." *Id.* at 453, 115 S.Ct. 1555. Here, there can be no confidence that all three judges would have determined that the aggravating factors listed in Ohio Rev.Code § 2929.04(B) outweighed the mitigating factors had they been presented with the withheld information, and therefore there can be no confidence that the sentence would have been the same.

*Id.* at 507.

In a footnote clarifying that its decision as to the kidnapping charge pertained only to the penalty phase, the court stated:

> Jells also argues that the *Brady* evidence demonstrates that he is actually innocent of the aggravating circumstance of kidnapping. In order to demonstrate actual innocence, Jells must show that, more likely than not, a reasonable juror would not have found him guilty beyond a reasonable doubt. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Jells's new evidence does not rise to the standard of establishing his actual innocence because a reasonable juror still could have found him guilty even after considering this new evidence.

*Id.* at 507, n. 10. The Sixth Circuit found that the withheld evidence would not have changed the result of the guilt phase but could have been a factor in the mitigation-phase verdict. The court specifically ordered the trial court to have a mitigation hearing using the undisclosed *Brady* material. Otherwise it would not have ordered a new penalty-phase trial.

-12-

## IV. Conclusion

For the foregoing reasons, the court **DENIES** Jells's *pro se* Motion for Unconditional Writ of Habeas Corpus, (ECF No. 129).  The court **DENIES** the Motion to Enforce the Writ of Habeas Corpus as Mandated by the Sixth Circuit.  (ECF No. 132.)

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.,*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2011